UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL EDDINGS,

    Plaintiff,

v.                                   Case No: 8:22-cv-02060-KKM-AEP

TARGET CORPORATION,

    Defendant.
_____

## ORDER

Michael Eddings slipped and fell on a plastic bag while pushing his cart toward the register at Target. Eddings sued Target Corporation for negligence. Target now moves for summary judgment based on the lack of actual or constructive notice of the bag. Because there is a genuine dispute of material fact on both issues, Target's motion for summary judgment is denied.

I.    BACKGROUND[1]

Although the Parties do not agree on much, three core facts are undisputed. *See* Statement of Facts (Doc. 30). On the evening of March 22, 2021, Eddings went to Target.

---

[1] To the extent that facts are capable of multiple inferences, the Court draws "all reasonable inferences in the light most favorable to the nonmoving party." *Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020).

*Id.* ¶ 1. Just before 7:45 PM, as he was approaching the register with his cart, Eddings claims he slipped and fell on a plastic bag. *Id.* ¶¶ 1, 3. Eddings did not see the bag before he fell. *Id.* ¶ 2.

Surveillance video from a security camera captured the incident and roughly twenty-nine minutes before it. Surveillance Video (Doc. 32).[2] The surveillance video shows two rows of cash registers where Target employees are checking out customers. The lane with Eddings's register is the second-from-the-left in the row farthest away from the security camera (located roughly in the top-middle of the frame). The surveillance video's view of Eddings's lane is somewhat obstructed because of the angle of the security camera and the position of the register to its immediate left.

The footage begins just before 7:16 PM and shows a cashier working at the register in Eddings's lane. Surveillance Video at 7:15:58. Another employee is initially working at the register to the immediate left of Eddings's, but he exits the frame shortly before 7:18 PM. *Id.* at 7:15:58–17:48. At several times during the footage, other employees who were not manning a register walk nearby or into Eddings's lane while performing their duties. *See id.* at 7:16:30–46, 7:28:35–58, 7:34:27–35, 7:37:52–56, 7:39:20–27.

---

[2] All citations to the surveillance video reference the time stamp located at the top-left of the frame.

At 7:21 PM, a customer in Eddings's lane appears to grab one or more unopened bags from their position on a rack at the end of the lane after being handed an item by the cashier. *Id.* at 7:21:00–11. The customer then walks back toward the back of the lane, at one point appearing to reach for something across the conveyor belt that ferries products up to the register. *Id.* at 7:21:12–49. Just after 7:22 PM, the cashier hands the customer something else, although exactly what is unclear. *Id.* at 7:22:01–03. Carrying the item, the customer walks toward her cart and the back of the lane again. *Id.* at 7:22:03–38. Eventually, the customer exits the frame altogether toward the back of the lane, where she remains until returning from the same direction about a minute later. *Id.* at 7:22:38–23:35. The customer is then joined by a man wearing a green shirt and the two continue to load their cart. *Id.* at 7:23:35–58.

At 7:25 PM, the customer appears to grab several more unopened bags from the rack in front of the cashier. *Id.* at 7:25:25–30. She hands the bags to the man in green, who grabs several more bags and then places them all on top of the cart, which at this point has moved up the lane and is filled with the customers' purchases. *Id.* at 7:25:30–40. The customer grabs several bags from the top of the cart and proceeds to bag various items. *Id.* at 7:25:47–26:31. The customer again walks back toward the back of the lane before returning to her cart with more items and continuing to bag. *Id.* at 7:26:32–27:27. At 7:29

3

PM, the customer reaches back toward the rack again, but it is unclear if she grabs any additional bags. *Id.* at 7:29:24–31.

At this point, the customer's cart is full to the point of overflowing. *See, e.g.*, *id.* at 7:30:00. The cashier grabs another handful of bags from the rack and hands them to the customer over the register. *Id.* at 7:30:08–13. The customer then pushes her cart to the very front of the lane, freeing up the register for the next cart in line (this appears to be the customer's second cart) and further obstructing the view of the lane from the surveillance camera. *Id.* at 70:30:24–31:00. Several minutes pass as the customer loads the second cart. During this time, the customer again walks toward the back of the lane, appearing to reach for another item across the conveyor belt. *Id.* at 7:35:00–38. After returning to the front of the lane, the customer reaches toward the rack, grabs more bags, bags items, and tosses several loose bags on the overloaded first cart. *Id.* at 7:35:39–36:21. While this is happening, a third customer also grabs bags from the rack and begins loading yet a third cart. *Id.* at 7:35:57–36:15. Around this time, the group of customers (which now numbers four adults and a child) have three carts in or nearby the lane. The first cart is past the front end of the lane obstructing an intersection, the second cart is at the front end of the lane just past the register, and the third cart is midway through the lane in front of the register and the cashier. *See, e.g.*, *id.* at 7:36:25. The customers finally leave the frame with their third cart shortly after 7:40 PM. *Id.* at 7:40:15–28.

4

After the first group leaves, customers continue to check out in the lane for several minutes without issue. Eddings and his cart enter the lane at the very top edge of the frame around 7:43 PM. *Id.* at 7:43:06–17. Just before 7:45 PM, the group of customers in front of Eddings finish paying and begin to leave. *Id.* at 7:44:48. As that group moves away from the register, Eddings begins to push his cart toward the front of the lane. *Id.* at 7:44:49. A few seconds later, Eddings slips and falls. *Id.* at 7:44:49–54. At no point during the footage leading up to the fall can a plastic bag be seen in roughly the area where Eddings fell. At some point after the fall, a Target store lead took several photos of the bag Eddings claims to have fallen on. *See* Photos (Doc. 29-3). The photos depict an unopened plastic grocery bag bearing the red Target logo toward the back-left portion of Eddings's lane. The bag is somewhat crumpled, but otherwise does not appear to be stained, scuffed, or wet. *See id.* The section of the lane depicted in the photos is not fully visible in the surveillance video because it is obstructed by the lane immediately to the left and the angle of the security camera. *Compare id.*, *with* Surveillance Video at 7:44:54.

At his deposition, Eddings testified that he had been in line for about ten minutes before falling and that he had not seen anyone drop anything on the floor during that time. Eddings Dep. (Doc. 29-2) at 51:9–16. Indeed, he did not see the bag at all until after he fell and a manager "pointed it out" still on his foot. *Id.* at 51:17–25. Eddings did not know who dropped the bag but assumed that, because it was "flat and unused," someone had

5

dropped it while placing bags on the rack. *Id.* at 59:2–23. Eddings estimated that the bag had been there for between ten and fifteen minutes because that was roughly how long that he and his family were "congregated" at the far edge waiting for space in the lane to free up. *Id.* at 59:24–60:25. Eddings never got a close look at the bag but described it as a "flat and white" "Target bag" with a visible Target logo. *Id.* at 56:12–24. Eddings confirmed that the photos appeared to depict the bag in the same condition as when he had slipped on it. *Id.* at 72:2–23. When asked whether he had seen anything to suggest that someone else had stepped on the bag before him, Eddings said that he had not. *Id.* at 72:24–73:4. He also denied seeing "any evidence of footprints, cart-wheel marks, [or] anything like that." *Id.* at 73:5–12.

Target's corporate representative and several of its employees testified that the kind of bag Eddings slipped on is shipped to the store in boxes and then distributed to registers for use by cashiers. Phieffer Dep. (Doc. 33-6) at 29:12–30:13, 93:16–22 (explaining that there would not be "any reason for a Target employee to be walking around with unopened bags"); Kaye Dep. (Doc. 33-4) at 15:14–17:20 (explaining the bag restocking process), 17:3–8 ("So sometimes we have the bags at the register, and before they're going on—for instance, if a cashier is putting on bags and a guest asks if they could have a bag, then we give them a bag. That's the only way a guest would get an unopened flat Target bag."); Bent Dep. (Doc. 33-3) at 20:18–21:15 (similar). Another employee testified that customers

6

sometimes "walk[ed] over to registers and just pull[ed] empty bags off because they want[ed] to use a bag for something, whatever it could be. And, again, those guests—a lot of bags fall down onto the ground." Mazzoni Dep. (Doc. 33-2) at 47:3–12. Target employees understood that fallen bags, like any other out-of-place object, could present a hazard. *Id.* at 33:20–22.

On June 2, 2022, Eddings sued Target in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida, claiming that he was injured due to Target's negligent failure to maintain its premises. Compl. (Doc. 1-1). Target removed the case to federal court, Notice of Removal (Doc. 1), and now moves for summary judgment, MSJ (Doc. 29).

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present

7

evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers*, 946 F.3d at 1262; *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of the non-movant.

## III. ANALYSIS

To sustain a negligence claim under Florida law, a plaintiff must establish:

> (1) the defendant owed a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) the defendant failed to conform to that duty; (3) there is a reasonably close causal connection between the nonconforming conduct and the resulting injury to the claimant; and (4) some actual harm.

*Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1169 (11th Cir. 2023) (internal quotation marks and alterations omitted) (quoting *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007)).

Under Florida's transitory foreign substance law, "[i]f a person slips and falls on a transitory foreign substance in a business establishment," he must also prove that "the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." § 768.0755(1), Fla. Stat. Although this case involves a plastic bag and not a conventional spill, § 768.0755 still controls. *See Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 317 n.1 (Fla. 2001) (defining the statutory phrase "transitory foreign substance" to include "any liquid or solid substance, item *or object* located where it does not belong" (emphases added)).

A business owner has "actual knowledge" of a dangerous condition when the owner or one of its agents "knows of or creates the dangerous condition." *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001). "Constructive knowledge may be proven by circumstantial evidence showing that" either "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition" or "[t]he condition occurred with regularity and was therefore foreseeable." § 768.0755(1)(a)–(b), Fla. Stat. Though the transitory foreign substance statute was passed in 2010, "Florida courts . . . long recognized the requirement [of active or constructive knowledge] at common law" before a 2002 statute revoked it, so state court decisions prior to 2002 or after 2010 are informative. *Sutton*, 64 F.4th at 1169 n.1.

9

Target argues for summary judgment based only on notice. Eddings responds that the evidence shows a genuine dispute of material fact as to whether Target had both actual and constructive notice.

### A. Actual Notice

Target argues that no evidence supports an inference of actual notice, i.e., that one of its employees "caused the bag to be on the floor or knew it was on the floor." MSJ at 7. I disagree.

First, Target contends that Eddings deposed several of its employees and that none testified to observing the bag in the relevant area before Eddings's fall. MSJ at 7. But Target does not cite those depositions or otherwise direct me to any record evidence in support of this argument. It is the movant's initial burden to "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Clark*, 929 F.2d at 608 (quotations omitted). Broad assertions about the contents (or lack thereof) of depositions not identified in Target's motion do not merit summary judgment without more.

Second, Target says, Eddings has no evidence "even suggesting" that a Target employee either dropped the bag or was aware of it prior to his fall. MSJ at 7. Eddings responds that Target had actual notice because the cashier created the hazard—either by handing out unopened bags to customers or by allowing customers to take them from the

rack understanding that they were likely to end up on the ground. Resp. (Doc. 33) at 10–14.

I agree with Eddings. To be sure, a tort plaintiff "may not pyramid inferences on other inferences" to defeat summary judgment. MSJ at 6. But far from a rickety construct of tangentially related facts, Eddings's theory of actual knowledge is straightforward: Over the roughly twenty (somewhat chaotic) minutes that the first group of customers was checking out, there were at least four instances when a customer was either given unopened bags by the cashier or took bags from the rack in plain view of the cashier. Surveillance Video at 7:21:00–11, 7:25:25–40, 7:30:08–13, 7:35:39–36:21. At least one of those customers then carried bags towards the back of the lane near to where Eddings slipped, which also appears to have been in plain view from the cashier's perspective. *Id.* at 7:21:11–23:35. Together with testimony from Target's employees and corporate representative on the availability of unopened bags to customers, that it was common for bags to end up on the floor, and that fallen bags could be a slipping hazard, Target's security camera footage (the veracity of which is undisputed) would permit a reasonable jury to find that the bag causing Eddings's fall was only in his lane because a Target cashier handed it out or allowed it to be taken. And although the cashier depicted in the surveillance video was never deposed, *see* Resp. at 6 n.1, a reasonable jury could infer from the video that she would have been aware of hazards present in her lane and in plain view.

11

Eddings's argument is unlike the base speculation that merited summary judgment on actual notice in a similar case against Target. *See Hall v. Target Corp.*, No. 8:22-cv-913-KKM, 2023 WL 4686093, at *3–4 (M.D. Fla. July 21, 2023) (Mizelle, J.) (summary judgment on actual notice appropriate when Plaintiff "put[] forward evidence that wet carts are slip hazards, that a wet cart could have dripped to cause his fall, and that sometimes Target employees did not fully dry the carts, but he put[] forward no evidence that there was a wet cart to begin with"). Whereas in *Hall* there was no evidence of a wet cart that could have created the allegedly offensive puddle, here there is video evidence showing a Target employee distributing unopened bags of the type that Eddings claims caused the accident to customers who then carried those bags near to the area the accident occurred. All the while, the cashier was working with, and thus necessarily paying at least some attention to, the same group of customers for just under twenty minutes. And she maintained a relatively consistent field of view that included the lane for longer than that time period.

In sum, there is no smoking gun on actual notice. But there is also far more than "only a guess or a possibility." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (quotations omitted). On this record, summary judgment is inappropriate.

## B. Constructive Notice

Constructive notice is more of the same. To prove constructive notice, Eddings must show either that the dangerous condition existed for enough time that Target should have known of it or that it occurred with enough regularity that it was foreseeable. As to duration, "at least fifteen to twenty minutes" is enough to prove constructive notice. *Sutton*, 64 F.4th at 1169 (quoting *Winn Dixie Stores, Inc. v. Williams*, 264 So. 2d 862, 864 (Fla. 3d DCA 1972)). If a surveillance video does not show a clear moment when the hazard appeared, "[a] reasonable jury could infer from the absence of a clear moment" that it was on the floor before the start of the video. *Id.* at 1172.

The surveillance video in this case shows just under twenty-nine minutes before Eddings's fall. Because of the angle of the security camera and the presence of various obstructions, the footage does not show a precise moment when the bag fell onto the floor during those twenty-nine minutes. The earliest likely cause of the hazard is between 7:21 PM and 7:24 PM, when a customer first takes unopened bags from the rack and carries them into the vicinity where Eddings later slipped. Surveillance Video at 7:21:11–23:35. On that understanding of the surveillance video, there are at least twenty intervening minutes between one potential cause and Eddings's fall—enough to survive summary judgment on constructive notice under *Sutton*. 64 F.4th at 1169. And even if it were not, "[a] reasonable jury could infer from the absence of a clear moment" that the bag upon

13

which Eddings claims to have slipped was on the floor before the start of the video and therefore Target should have discovered it. *Id.* at 1172.

Eddings has also demonstrated a genuine dispute of material fact on whether "[t]he condition occurred with regularity and was therefore foreseeable" under § 768.0755(1)(b). Several Target employees testified that it was common for cashiers to give customers unopened bags from the rack if they wanted them and for customers to simply take unopened bags without asking. Bent Dep. at 19:19–24 ("We have bag bins that the bags attach to and as we're checking things out, we are bagging things or the guests can bag them as they come down, as the stuff comes down if they would rather do that. That's their choice, you know."), 20:3–9 (**Q:** "Okay. So guests are able to take opened Target bags from the registers?" **A:** "They do. I can't say they're allowed to, but they do do it, yes." **Q:** "Okay. You've seen them do it before?" **A:** "Well, sure."); Kaye Dep. at 17:3–8 ("So sometimes we have the bags at the register, and before they're going on—for instance, if a cashier is putting on bags and a guest asks if they could have a bag, then we give them a bag. That's the only way a guest would get an unopened flat Target bag."). Another employee testified that, once customers received bags this way, "a lot of bags fall down onto the ground." Mazzoni Dep. at 47:3–12.

The employees' testimony must be considered together with the surveillance video—which shows multiple customers either being handed bags or taking bags in exactly

14

the manner described by Target's employees, and the photos—which show that an unopened bag somehow made its way onto the floor. *See* Surveillance Video at 7:21:00–11; 7:25:25–40; 7:30:08–13; 7:35:39–36:21; Photos. Viewing this evidence in the light most favorable to Eddings, a reasonable jury could find that the phenomenon of unopened bags being distributed to customers and then ending up on the floor was a regularly occurring and foreseeable hazard. *See, e.g., Feris v. Club Country of Fort Walton Beach, Inc.*, 138 So. 3d 531, 532–35 (Fla. 1st DCA 2014) (reversing grant of summary judgment for the defendant in the light of witness testimony and contemporaneous evidence suggesting that patrons regularly spilled drinks on the dance floor and that there were drinks on the floor the night of the incident). Thus, Eddings survives summary judgment as to constructive notice on both theories.

## IV. CONCLUSION

Eddings has shown that a reasonable jury could infer both actual and constructive notice. Accordingly, the following is **ORDERED**:

1. Target's motion for summary judgment (Doc. 29) is **DENIED**.

**ORDERED** in Tampa, Florida, on February 5, 2024.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge